## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ONEOK ROCKIES MIDSTREAM, L.L.C., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 20-cv-00580-CVE-SH |
| GREAT PLAINS TECHNICAL SERVICES, INC., | ) ) ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the Court is the amended motion of Plaintiff ONEOK Rockies Midstream, L.L.C. ("ONEOK") to strike or exclude expert opinions disclosed by Defendant Great Plains Technical Services, Inc. ("Great Plains") after the expert disclosure deadline. (ECF No. 75.) In its motion, ONEOK argues that the supplemental reports submitted by Great Plains' four experts—G. Britt McNeely, Dr. William M. Clark, Dr. Bruce Pinkston, and William R. Coleman—were untimely, as well as surprising and prejudicial. (*Id.* at 2.) As the reports were submitted less than 30 days before trial and contained expanded opinions, Plaintiff ONEOK contends that allowing Defendant's experts to supplement their reports "would require Plaintiff to either retain additional experts or have its experts address these new opinions . . . ." (*Id.* at 3.) Defendant argues that supplementation of the reports was (1) timely under Fed. R. Civ. P. 26(e)(2); (2) proper under Rule 26(e)(1)(a); and (3) neither surprising nor prejudicial to Plaintiff considering the factors set forth in *Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.*, 170 F.3d 985, 993 (10th Cir. 1999). (ECF No. 81.) For the reasons explained below, the Court grants Plaintiff's motion in part and denies in part.

I.    **BACKGROUND**

This matter arises out of a fire that occurred on July 8, 2018, at ONEOK's Stateline Gas

Plant outside of Williston, North Dakota.  ONEOK alleges the fire was the result of a defective

weld made on the drive shaft of a motor that had previously been sent to Great Plains for service.

In the years following the incident, up to and until the months preceding their original November

2021 trial date,[1] the parties engaged in extensive discovery regarding the incident.  It is undisputed

that such discovery continued after the original discovery cutoff of August 2, 2021.  (*See generally*

ECF Nos. 75, 81, 98.)  This post-deadline discovery entailed continuous production of documents,

taking of depositions, and multiple inspections—including inspections of the remains of the

welded component and of the Stateline Gas Plant in North Dakota.

At issue in Plaintiff's motion are four reports submitted by Defendant's experts roughly a

month before the original trial date.  (*See* ECF No. 75 at 2.)  Each of these reports claims to

supplement a written report previously submitted pursuant to Rule 26(a)(2)(B).  Per the original

scheduling order, Defendant was required to identify experts and provide reports by July 5, 2021.

(ECF No. 21.)  The parties, however, agreed to extend Defendant's expert designation deadlines.

(ECF No. 75 at 2.)  Defendant's expert reports were submitted and supplemented as follows:

- Britt McNeely originally submitted his report on July 30, 2021, and supplemented it on October 17, 2021.  (Mot. Exs. A & E, ECF Nos. 75-1 & 75-5.)

- Dr. William Clark originally submitted his report on August 5, 2021, and supplemented it on October 19, 2021.  (Mot. Exs. B & F, ECF Nos. 75-2 & 75-6.)

- Dr. Bruce Pinkston dated his original report August 9, 2021; Defendant disclosed it on August 13, 2021; and Dr. Pinkston supplemented it on October 15, 2021.  (Mot. Ex. C, ECF No. 75-3; Resp. Ex. 32, ECF No. 86-4 at 4; Mot. Ex. G, ECF No. 75-7.)

---

[1] Trial is now set for January 18, 2022.  (ECF No. 103.)

- William Coleman submitted his original report on August 12, 2021, and supplemented it on October 18, 2021.  (Mot. Exs. D & H, ECF Nos. 75-4 and 75-8.)

All supplementations were provided to Plaintiff on or before October 19, 2021.  (ECF No. 75 at 2.)  Plaintiff asks this Court to exclude the supplementations and limit the above-identified experts to their original reports and opinions.  (*Id.* at 4.)

## II.     APPLICABLE LEGAL PRINCIPLES

Rule 26 requires that a witness retained to provide expert testimony in a case produce a written report containing the following: (1) a complete statement of all opinions the witness will express and the bases and reasons for those opinions; (2) the facts or data the expert considered in forming such opinions; (3) exhibits that will be used to summarize or support the opinions; (4) the expert's qualifications, including a list of publications from the previous 10 years; (5) a list of all other cases from the previous four years in which the witness has testified as an expert; and (6) a statement of the compensation to be paid to the expert.  Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi).  This expert report is intended to reflect "the substance of the [expert's planned] direct examination" at trial.  *Id.* advisory committee's note to 1993 amendment; *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002).  Providing such a report allows the opposing party a "fair opportunity to assess the expert's credentials, methodology[,] and conclusions" while also ensuring the opposing party can prepare for that expert's deposition and determine their own expert witness needs.  *Rodgers v. Beechcraft Corp.*, No. 15-CV-129-CVE-PJC, 2016 WL 7888048, at *2 (N.D. Okla. Sept. 20, 2016), *R. & R. accepted*, 2017 WL 465474 (Feb. 3, 2017); *see also Jacobsen*, 287 F.3d at 953 (noting such disclosure allows a party to prepare for cross-examination and perhaps to arrange for expert testimony from other witnesses).  Similarly, the report prevents experts from "lying in wait" and providing new opinions at the last minute without giving the opposing party proper notice or time to respond.  *Rodgers*, 2016 WL 7888048, at *2.

Under Rule 26, however, experts are required to supplement their reports "in a timely manner" when they learn that the report, in some material respect, is incomplete or incorrect. *See* Fed. R. Civ. P. 26(e)(1)(A). This includes when there are "changes in the opinions expressed by the expert . . . ." *Id.* advisory committee's note to 1993 amendment.

Supplemental reports must be provided by the time the party's pretrial disclosures are due under Rule 26(a)(3). Fed. R. Civ. P. 26(e)(2).[2] While supplementation is required, it is not an invitation to substantially change or bolster opinions with information that should have been included in the original report. *See Glob. One Eng'g, LLC v. Sitemaster, Inc.*, No. 15-CV-583-CVE-FHM, 2016 WL 6769120, at *3-4 (N.D. Okla. Nov. 15, 2016).[3] The purpose of supplementation is to allow for correction of inadvertent errors in timely filed reports, "not to allow a party to engage in 'gamesmanship'—creating a 'new and improved' expert report in order to gain tactical advantage . . . ." *Rodgers*, 2016 WL 7888048, at *2-3 (quoting *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008)). As this Court has noted numerous times,

> A supplemental expert report that states additional opinions or rationales or seeks to "strengthen" or "deepen" opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)(1). "To rule otherwise would create a system where preliminary [expert] reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given. This result would be the antithesis of the full expert disclosure requirements stated in Rule 26(a).

---

[2] According to Fed. R. Civ. P. 26(a)(3)(B), a party's pretrial disclosures are due 30 days before trial unless the court orders otherwise. Here, the Court's scheduling order includes a date certain for pretrial disclosures. (*See, e.g.*, ECF No. 62 ¶ 12.)

[3] "Rule 26(e)(1) does not permit parties to produce 'supplemental reports whenever they believe such reports would be "desirable" or "necessary" to their case,' and supplemental reports are permitted [only] '(1) upon court order; (2) when the party learns that the earlier information is inaccurate or incomplete; or (3) when answers to discovery requests are inaccurate or incomplete.'" *Id.* at *3 (quoting *Minebea Co. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005)).

4

*Palmer v. Asarco Inc.*, No. 03-CV-0498-CVE-PJC, 2007 WL 2254343, at *3-4 (N.D. Okla. Aug. 3, 2007) (quoting *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006)); *see also Rodgers*, 2017 WL 465474, at *3 (same); *Glob. One Eng'g*, 2016 WL 6769120, at *4 (same); *Lexington Ins. Co. v. Newbern Fabricating, Inc.*, No. 14-CV-610-CVE-TLW, 2016 WL 6652794, at *1 (N.D. Okla. July 8, 2016) (same).  As such, in the event the supplemental report is not submitted for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report—as allowed under Rule 26(e)—the court may exclude such reports and the opinions contained therein on the basis that they were not properly disclosed. *See Rodgers*, 2016 WL 7888048, at *3.

To avoid such exclusion, the Court must find that the supplementing party has shown the violation of Rule 26 to be justified or harmless.  *See Glob. One Eng'g*, 2016 WL 6769120, at *3. The Tenth Circuit has identified four factors to consider in making this determination:  (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.  *Woodworker's Supply*, 170 F.3d at 993.  "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Id.* (quoting *Mid-Am. Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996)).

## III.   TIMELINESS OF SUPPLEMENTATION

The Court first considers the timeliness of the experts' supplementations.  ONEOK argues the supplemental reports were "untimely disclosures" (ECF No. 98 at 10), apparently because they occurred less than 30 days before the then-trial date (ECF No. 75 at 2-3).  To the extent this is Plaintiff's only argument on timeliness, Plaintiff is mistaken—at least so long as the reports were

5

truly supplementations.  As discussed above, a party must disclose any supplementation to its expert reports by the time its pretrial disclosures are due.  Fed. R. Civ. P. 26(e)(2).  Pursuant to the scheduling order in effect at the time the recent reports were submitted, Great Plains' pretrial disclosures were due on October 19, 2021.  (ECF No. 62 ¶ 12.)  Plaintiff does not dispute that the four supplemental reports were disclosed on or before that date.  (ECF No. 75 at 2.)  As such, although the disclosures were made less than 30 days before trial, if properly supplemental, they were still timely.  Fed. R. Civ. P. 26(a)(3)(B) & (e)(2).

The true operative question before the Court is whether the reports were acceptable supplementations as contemplated by Fed. R. Civ. P. 26(e).

## IV.    PROPRIETY OF SUPPLEMENTAL REPORTS

Before reviewing the propriety of each expert's supplemental report individually, the Court must address Defendant's overarching arguments regarding the information elicited through post-deadline discovery.  In particular, the Court has considered whether, in light of the strict standards articulated above, the continued discovery in-and-of-itself suggests supplementation was proper.  Upon consideration of Defendant's arguments, the Court finds that it does not.

Defendant is correct that Plaintiff has failed to identify specific opinions that were newly added to the experts' original reports.  (Resp. at 11-12, ECF No. 81 at 14-15.)  This certainly would have been more helpful than Plaintiff's categorical arguments that the disclosures were improper simply because they were 30 days prior to trial (ECF No. 75 at 3), or its attacks on the character of opposing counsel, however alliterative (ECF No. 98 at 1).  However, as discussed below, it is clear from even a cursory review that some of the reports were substantially altered, and the Court is not convinced Defendant has sufficiently explained the need for all of its experts' supplementations.

Defendant asserts that it has "re-review[ed] the opinions as set forth in the supplemental reports to confirm they qualify as either proper supplements or amendments" and concluded that, aside from a few paragraphs in the report of Britt McNeely, all supplementations are proper. (Resp. at 12-15, ECF No. 81 at 15-18.)  Noting that "critical discovery was still ongoing" after the experts served their original reports,[4] Defendant highlights the inspection of the failed motor shaft at the Baker Risk lab in San Antonio on August 6, 2021; the inspection of Plaintiff's Stateline Gas Plant in Williston, North Dakota, on August 11, 2021; and the deposition of Scott Porter that began on August 12, 2021.  (Resp. at 12, ECF No. 81 at 15.)  Defendant argues that this post-deadline discovery provided new information (or contextualized information) obligating its experts to submit supplemental reports.  (Resp. at 12-14, ECF No. 81 at 15-17.)  Defendant also generally references the continued post-deadline production of documents, but—with a few notable exceptions discussed below—provides no explanation as to what new information from those documents affected the experts' reports.  In any event, that Defendant gleaned new information does not, on its face, justify wholesale changes to the reports in the name of supplementation.[5]

---

[4] "Generally, a court should 'not excuse non-compliance with Rule 26 by one party for the reason that the other party may not have fully complied' with discovery requests." *Jacobsen*, 287 F.3d at 954 (quoting *Carney v. KMart Corp.*, 176 F.R.D. 227, 230 (S.D.W. Va. 1997)).  In this case, however, it appears the parties' agreed to the out-of-time discovery, including post-deadline production, inspections, and depositions.

[5] The Court notes that it is clear both parties were dilatory in discovery.  Even so, the Court's sympathy is limited.  Regarding the inspections and depositions particularly, Defendant waited until the last minute to make its requests and thereby risked that its experts would not have the chance to review the discovery or incorporate it into their reports before the disclosure deadline. Pursuant to the original scheduling order (ECF No. 21), Defendant was to provide expert identification and reports by July 5, 2021.  For roughly six months, Defendant was aware this deadline was approaching.  Moreover, for over a year, Defendant was—or should have been— aware of the potential need to depose Scott Porter (identified by at least April 28, 2020 as the person who assisted Plaintiff's counsel in preparing all interrogatory answers and as "Manager of Mechanical integrity and Reliability for ONEOK" (Reply Ex. 3, Ans. to Interrog. No. 1, ECF No. 98-3 at 15)) and for its experts to inspect the Stateline Gas Plant and the component parts at issue

Instead, in many instances, the experts appeared simply to have completed work they could have done prior to their original disclosures—reviewing information that was previously available and refining their opinions.  Where discovery simply confirmed information that was already known, updated reports would merely reflect a party attempting to strengthen, deepen, or bolster opinions previously set forth in an expert report.  Case law has consistently held this is an improper use of supplementation.  *See, e.g.*, *Cook*, 580 F. Supp. 2d 1071, 1169; *Rodgers*, 2017 WL 465474, at *3; *Glob. One Eng'g*, 2016 WL 6769120, at *4; *Lexington Ins. Co.*, 2016 WL 6652794, at *1. Defendant appears to have mistaken the deadline for supplementation as the deadline for its experts' final opinions.  Those were due in July (or, as extended by the parties' agreement, by mid-August).  All that was allowed on October 19th, was the timely correction of mistakes or supplementation based on truly new information.

Below, the Court examines each expert's report individually, first determining whether there was a proper supplementation and, to the extent not, whether the violation of Rule 26 was justified or harmless.

### A.    William M. Clark, Ph. D.

Dr. William Clark was retained by Defendant to testify regarding the economic losses asserted by Plaintiff.  (ECF No. 75-2 at 2.)  Dr. Clark's original report, provided on August 5,

---

in the 2018 fire.  Yet, as far as the Court can tell, Defendant waited until—at the earliest—June 18, 2021, to request the Rule 30(b)(6) deposition for which Mr. Porter sat (ECF No. 75-9 at 1); waited until—at the earliest—June 28, 2021, to request inspection of the Stateline Gas Plant (Reply Ex. 1, Req. for Insp. No. 1, ECF No. 98-1 at 7); and waited until July 1, 2021, to request inspection of the shaft, coupling, and compressor (Resp. Ex. 27 at 2, ECF No. 86-2 at 23).  All these requests came days before its expert reports were originally due and during a time when the parties were discussing an agreed extension of expert deadlines (ECF No. 75-10).  Considering the liberal supplementation Defendant's experts engaged in, it is apparent that they were not prepared to rely solely on information compiled before their expert report deadline, or the discovery deadline for that matter.  A wish to supplement the reports was inevitable based on Defendant's discovery choices.  However, just because it was inevitable does not mean it was inherently proper.

2021, primarily appears to be a rebuttal to the June 2021 expert report of Tiffany L. Drane. (*Id.*)

Dr. Clark opined that "the appropriate measure of economic loss is marginal or incremental profit

loss" and "[a]ny operational interruptions not attributable to defendant's alleged actions should be

excluded as recoverable economic losses." (*Id.* at 2-3.) As for the facts and data considered, Dr.

Clark cited certain case filings, "[a]nalysis of reduced revenue and referenced production

documents," Ms. Drane's report, and a 1998 article by Patrick Gaughan. (*Id.* at 2-4.)

Dr. Clark issued his supplemental report on October 19, 2021. (ECF No. 75-6.) This

supplemental report is a single page that documents "additional information [that] came to [Dr.

Clark's] attention" after he submitted his first report. (ECF No. 75-6 at 2.) This new information

appears to consist of (1) the deposition of Scott Porter, which occurred on August 12, 2021, after

Dr. Clark's original report; and (2) a 2018 report of Sean Miller. (*Id.*) The Court is unable to

determine when the report of Sean Miller was provided to Defendant, but Plaintiff has not disputed

Dr. Clark's statement that this information was new.[6] The undersigned will take Dr. Clark at his

word and find he relied on only newly discovered information not available at the time of his

original report.

The majority of Dr. Clark's supplemental report simply adds facts about the operation and

planned repair/retrofit of Train 1 and Train 2. (*Id.*) The supplemental report relates to Dr. Clark's

original opinion that interruptions in operation not attributable to Defendant are not recoverable

economic losses (ECF No. 75-2 at 3). For example, in his supplement, Dr. Clark opines that "[i]f

Train 2 maintenance had been 'executed' during the alleged damage period, any operational

---

[6] The Court does note that photographs from Mr. Miller's firm, J.S. Held, are among the post-cutoff production that Plaintiff now labels as "add[ing] nothing to the analysis of this case" (ECF No. 75 at 4) yet still includes in its own exhibit list for trial (ECF No. 68-1 at 11, Pl. Ex. 235). (*See* ECF No. 98 at 9, stating that documents 123718-124014 were produced on August 25, 2021.)

interruptions would be attributable to retrofits/repairs rather than the fire" and that the continuous operation of Train 2 was "questionable" considering Train 1 was inoperable. (ECF No. 75-6 at 2.) The Court does not consider these to be new opinions and views the report as proper under Rule 26(e), as it supplements an earlier report based on new information obtained by the expert. This is not the type of bolstering or strengthening that the Court has warned against in the past. As such, Plaintiff's motion as to Dr. Clark will be denied.

### B.    William R. Coleman, M.S., P.E.

Plaintiff retained William R. Coleman to provide testimony regarding metallurgical, mechanical, and general engineering principles. (ECF No. 75-4 at 4.) Mr. Coleman provided his original report on August 12, 2021 (*id.* at 2), offering opinions based on facts and data that included one deposition, certain bates-stamped documents, technical reports, and other listed documents (*id.* at 5). Mr. Coleman's report noted more than once that his findings would likely require modification based on, among other things, the fact that he did not have in his possession photomicrographs taken during the August 6, 2021, laboratory examination. (*Id.* at 6, 8.) According to Defendant, these photomicrographs were not provided to Mr. Coleman until October 14, 2021.[7] (Resp. at 14, ECF No. 81 at 17.) Upon receipt of these images, Mr. Coleman finished his review and provided a supplemental report on October 18, 2021. (ECF No. 75-8.) This supplemental report contained an explanation of the "[m]icroscopic examination of specimens taken from the fractured shaft" based on the "attached photomicrographs." (*Id.* at 3.)

---

[7] Plaintiff asserts these documents were only re-produced in October, after having been previously produced under different bates stamps on August 25, 2021. (ECF No. 98 at 9 & n.22.) However, the exhibit cited by Plaintiff only shows this later production. (Reply Ex. 32, ECF No. 98-31.) In any event, either production would have been after Mr. Coleman's original report date.

However, the report also substantially bolstered and expanded Mr. Coleman's original opinions. (*Compare* ECF No. 75-4 at 6-8 to ECF No. 75-8 at 3-6.) In Mr. Coleman's first report, he offered his conclusions and opinions in two paragraphs. (ECF No. 75-4 at 7-8.) In his supplemental report, he offers four paragraphs worth of opinions that significantly strengthen and deepen his original opinions and offer new opinions based on the later-obtained evidence. (ECF No. 75-8 at 5-6.) For example, where his original opinion was that "[t]he extent of fatigue fracture indicates that the shaft experienced moderate torsional loading," in his supplemental report he now opines that "the motor shaft experienced significant combinations of torsional and bending loads[] and that the resulting stresses precipitated fracture and ultimately failure." (ECF No. 75-4 at 8; ECF No. 75-8 at 5 (emphasis added).) Other opinions are expounded upon as well. In Mr. Coleman's supplemental report, he adds to his original second conclusion that the "[f]racture may have originated in the vicinity of the keyway" and further opines that this location was "predictable given appropriate levels of repeating (cyclical) stresses" and that the failure of the component was "inherent[ly] cause[d]" by "sloppy design." (ECF No. 75-4 at 8; ECF No. 75-8 at 5.) At the very least, these are attempts to bolster the relatively bare-bones opinions offered in the original report. In light of the case law discussed above, such a robust supplementation may be improper under Rule 26(e).

However, although Mr. Coleman's supplemental report violates Rule 26(e), this Court finds it justifiable considering the new evidence provided.[8] Applying the factors set forth in

---

[8] The Court notes that Mr. Coleman also cites as "[a]dditional materials" documents he referenced in his original report (such as the deposition of Joseph Roll and the report of Timothy Hatch); other new evidence (such as the September 2021 deposition of Shane Johnson and the previously discussed report of Sean Miller); as well as some previously unmentioned but available documents (bates numbered 2250-2256, which were produced in April 2020). (ECF No. 75-8 at 3.) However, the thrust of Mr. Coleman's supplemental report remains focused on the new information relating

*Woodworker's Supply*, the undersigned finds that Plaintiff should not be surprised or prejudiced by these new opinions—as it was made aware via Mr. Coleman's original report that his findings would likely be supplemented based on his review of the photomicrographs that were in Plaintiff's control, and because Plaintiff had equal access to such evidence. *See Woodworker's Supply*, 170 F.3d at 993. Moreover, there is no reason to believe this supplementation will disrupt trial, which is now scheduled for January. From the briefing in this matter, it appears that neither party noticed the depositions of any of the other party's experts; the schedule does not contemplate Plaintiff submitting expert reports after Defendant; and, if any rebuttals are allowed and necessitated under Rule 26(a)(2)(D)(ii), Plaintiff has had time to make them. The undersigned also finds no bad faith, as Mr. Coleman gave notice in his original report that supplementation based on the photomicrographs would be forthcoming. *Id.* As such, although the supplement partially falls outside the scope of Rule 26(e), in this narrow circumstance, it is justified. For these reasons, Plaintiff's motion as to Mr. Coleman is denied.

### C.     G. Britt McNeely

The Court now comes to Defendant's remaining expert reports (Mr. McNeely and Dr. Pinkston). In contrast to the supplemental reports submitted by Dr. Clark and Mr. Coleman, these reports stretch Rule 26(e) beyond its breaking point, abusing a rule that primarily allows supplementation to correct "inadvertent errors" and omissions. *See Rodgers*, 2016 WL 7888048, at *2. The undersigned will discuss Mr. McNeely's report first.

G. Britt McNeely—testifying regarding engineering, operations, and incident analysis of the operations and maintenance activities performed at the Stateline Gas Plant—submitted his

---

to the photomicrographs, and these additional materials could reasonably be seen as relating to analyzing that new information.

original report on July 30, 2021. (ECF No. 75-1 at 2.) Over five pages, Mr. McNeely outlined the background and circumstances surrounding the incident, his observations and the bases for his opinions, and his conclusions regarding the fire and its causes. (*Id.* at 2-6.) His original report set forth observations regarding the motor in use on the deethanizer trains, operating and shutdown temperatures, and the motor shaft, compressors, and piping supports. (*Id.*) Mr. McNeely also discussed Plaintiff's failure to follow the motor manufacturer's recommendations regarding alignment and temperature. (*Id.* at 5.) He went on, in one page of discussion, to offer conclusions regarding the issue of maintaining equipment versus lost revenue; to opine that the deethanizer train installation had numerous design and installation issues; and to opine that the compressor seal failed before the shaft failure (due to the shaft "walking"), which caused the fire at issue. (*Id.* at 6.)

After inspecting the Stateline Gas Plant and attending the deposition of Scott Porter on August 11 and 12, 2021, however, Mr. McNeely submitted a report on October 17, 2021, that had grown substantially. The Court will not recount each and every addition to Mr. McNeely's original report but notes that changes may be found in almost every paragraph. It is clear the document has been significantly altered. What was once five pages of observations and conclusions has now ballooned to 11. (*Compare* ECF No. 75-1 at 2-6 *to* ECF No. 75-5 at 2-12.) The page count of a supplemental report does not inherently mean the document fails to qualify as a proper supplementation, but experts must be wary of staying within the narrow confines of Rule 26(e). When an expert resubmits their original report with extensively bolstered opinions, observations, and reasoning, courts will—for good reason—be on their guard. As demonstrated by Mr. McNeely's supplemental report, often the temptation to deepen or strengthen original opinions and findings—or to offer opinions not explicitly tied to newly discovered evidence—is too great.

Defendant has conceded that the last three paragraphs of Mr. McNeely's report are not proper supplementations under Rule 26(e) and has withdrawn them. (ECF No. 81 at 17.) The Court appreciates Great Plains' counsel's citation to applicable authorities and efforts to comply with those authorities. However, even without the withdrawn paragraphs, Mr. McNeely's supplemental report fails to qualify under the rule.

In his supplemental report, Mr. McNeely alters and extensively bolsters his original observations and opinions, in addition to offering new opinions that were not contained in his first report. For instance, in the "Observations" section of his report, McNeely restates his original observations with substantially expanded analysis, re-worded and re-worked facts, and brand-new paragraphs.[9] (ECF No. 75-5 at 4-7.) Furthermore, the vast majority of McNeely's "Discussion / Conclusion" section is either substantially altered or brand-new.[10] (*Id.* at 7-12.) It offers new opinions and significantly alters the opinions and observations from the original report. This is

---

[9] For example, McNeely opines for half a page about the "three priorities for protection of plant safety systems for the industry . . ." (ECF No. 75-5 at 6-7.) He also—for the first time in his supplemental report—opines about motor alignment issues being caused by bolt bindings and about revisions made to the motor/compressor couplings. (Supp. Rpt. §§ III(A) & III(9), ECF No. 75-5 at 4, 7.)

[10] The undersigned will not summarize the numerous pages of added conclusions and opinions. (ECF No. 75-5 at 7-12.) Here is one example of the substantial alterations occurring in the report: in McNeely's first report he opined that the "information that [he had] studied shows that the deethanizer train installation had numerous design / installation issues." (ECF No. 75-1 at 6.) His supplemental report, however, states as follows:

> The information that I have studied shows that the de-ethanizer train installations had numerous design / installation / operations issues from the initial startup. Motor / compressor mis-alignment; skid and piping design and support issues; piping vibration and pulsation issues; broken small piping and tubing; compressor, motor and coupling issues; motor shaft walking; vibration and unusual noises; as well as oil carryover were some of the well documented issues that should have not occurred on a new system. These issues show that these de-ethanizer train skids were unsafe, inefficient, costly and unreliable as process equipment.

(ECF No. 75-5 at 8.)

exactly the type of "new and improved" report that courts have held to be an improper

supplementation.  Mr. McNeely's report is not limited to correcting an error or remedying an

inadvertent omission.  The Court recognizes that factual discovery by the parties was ongoing—

and that Mr. McNeely participated in a site inspection and attended the deposition of Scott Porter

after his original report was due.[11]  But, Mr. McNeely failed to link his new observations and

conclusions to this new evidence.  Instead, the supplemental report simply lists all the facts and

data on which Mr. McNeely has relied,[12] some of which was produced after his original report

(Supp. Rpt. Ex. A ¶¶ 15-16, 18-19, 24, 34-36, ECF No. 75-5 at 13-14), but much of which appears

to have been previously available.[13]  (*See also* ECF No. 75-5 at 3 ("I have revised this report based

on a site visit, witnessing depositions of ONEOK employees, and my continuing study of materials

produced in the case." (emphasis added)).)   The Court cannot find this to be a proper

supplementation.

The Court further does not find this improper supplementation harmless or justified under

*Woodworker's Supply*.  Expert reports are to be complete when issued and are required to reflect

---

[11] The Court does not, however, understand why.  The parties knew as early as July 19, 2021, that the inspection and deposition would occur on August 11th and 12th. (Resp. Ex. 28, ECF No. 86-2 at 25-26.)  Then, on July 28, 2021, when scheduling the August 6th inspection of the failed part, the parties confirmed an agreement to extend the deadline for experts Coleman and Pinkston until August 12th. (Resp. Ex. 11, ECF No. 86-1 at 96-97.)  If this information was going to be pertinent to Mr. McNeely's report, it is not clear why Defendant did not seek a similar extension or relief from the Court.

[12] A similar list was not provided to the Court with Mr. McNeely's original report, so it is also impossible to determine what information was "new" to Mr. McNeely, even if previously available to Defendant or its counsel.

[13] This list does not include the depositions of Steve Gendreau, Andy Williams, and Anselmo "Junior" Hernandez, taken on September 7-8, 2021 (Resp. at 9 ¶ 34, ECF No. 81 at 12), so the Court does not credit Defendant's assertion that "Mr. McNeely also relied upon information first secured by Great Plains through the depositions of three ONEOK corporate representative witnesses on September 7 and 8, 2021" (Resp. at 14, ECF No. 81 at 17).

the substance of the expert's intended direct examination at trial. *Jacobsen*, 287 F.3d at 953. If the undersigned accepts Mr. McNeely's supplementation, there is little of his original opinion that would remain. Even now, Mr. McNeely anticipates reviewing additional deposition transcripts or attending additional depositions, if they are scheduled. (ECF No. 75-5 at 15.) This freewheeling style of supplementation represents exactly the sort of never-ending stream of ever-changing reports that cannot be cured with additional discovery or time for the opposing party. Plaintiff has been prejudiced by the wholesale change to Mr. McNeely's report based on both pre-existing and new discovery. The Court cannot confidently say that, for example, Plaintiff should have known, based on general principles of "priorities . . . for the industry" (*supra* n.9), the information on which Mr. McNeely would now be relying in his new report. *Cf. Woodworker's*, 170 F.3d at 993. And, while the trial has been delayed and the parties have, apparently, continued to conduct some discovery by agreement, most of the important deadlines have already passed. Discovery is closed, pretrial disclosures have been filed, and the parties' have pending objections to deposition designations. All that is left in this case is the agreed pretrial order, jury instructions, voir dire, demonstrative exhibits, pretrial, and trial. While the Court finds no bad faith, the other factors weigh against finding the error justified or harmless. Thus, Plaintiff's motion will be granted as to Mr. McNeely's report.

### D.     Bruce Pinkston, Ph.D., P.E.

Finally, the Court considers the supplemental report of Dr. Bruce Pinkston. Many of the same problems that render Mr. McNeely's report improper plague Dr. Pinkston's supplementation, and the Court will grant Plaintiff's motion as to Dr. Pinkston's, as well.

Dr. Pinkston apparently finalized his expert report on August 9, 2021 (ECF No. 75-3 at 2), but Defendant's counsel did not provide this report to Plaintiff until August 13th (Resp. Ex. 32,

ECF No. 86-4 at 4).  On August 6th, prior to the finalization of his report, Dr. Pinkston attended

the inspection of the shaft remains at the Baker Risk facility in San Antonio, Texas.  (Resp. at 7 ¶

24, ECF No. 81 at 10.)  On August 11th, prior to counsel providing the report to Plaintiff, Dr.

Pinkston attended a site inspection of the Stateline Gas Plant in Williston, North Dakota.  (*Id.* at 8

¶ 27, ECF No. 81 at 11.)  On August 12th, he also attended the deposition of Scott Porter.  (*Id.* ¶

29.)

Approximately two months later, on October 18, 2021, Defendant provided Dr. Pinkston's

supplemental opinion.  (ECF No. 75-7.)  Like Mr. McNeely's supplemental report, Dr. Pinkston's

has changed greatly.  Defendant argues this is primarily because of the inspections and Dr.

Pinkston's attendance at the Porter deposition.[14]  (Resp. at 12-14, ECF No. 81 at 15-17.)  This,

however, begs the question as to why the report was not revised before it was submitted to Plaintiff

on August 13, 2021, when the inspections and the deposition had already taken place.[15]  Such

revision, prior to providing the report to Plaintiff, would have saved the need for any

supplementation.

Even if based on new information, Dr. Pinkston's supplemental report would be improper

under Rule 26(e).  In his original report, he offered observations and conclusions about the motor

shaft failure, along with a discussion about its causes and the cost claims made by Plaintiff.  (ECF

No. 75-3 at 3-5.)  In his supplemental report, however, his conclusions regarding the shaft failure

have expanded substantially, and he now offers opinions about other failures, such as the defective

nature of the propane compressor skids.  (*See* ECF No. 75-7 at 3-8.)  His original report contained

---

[14] Dr. Pinkston's report also states, without explanation, that "[v]arious additional discovery documents were also reviewed."  (ECF No. 75-7 at 3.)  There is no way to tell from this disclosure whether these "additional documents" were produced before or after Dr. Pinkston's original report.

[15] As previously noted (*supra* n.11), these events had been scheduled in July, at the same time the parties were agreeing to an extended deadline for Dr. Pinkston's report.

six conclusions with explaining subparts.  (ECF No. 75-3 at 3-5.)  His supplemental report contains

15.  (ECF No. 75-7 at 3-8.)  Many of these—such as paragraphs 1, 2, and 8, among others—are

brand-new conclusions that are not contained in the original report.  Others are substantially altered

or strengthened with further analysis and stronger wording.  As discussed with Mr. McNeely's

supplemental report, such excessive usage of new opinions and altered discussions in a

supplemental report subverts the limited nature of the rule.

The Court has also considered Defendant's argument that Dr. Pinkston's report had to be

amended due to his improper reliance on a schematic portraying the shaft diameter as 4.3 inches.

(Resp. at 15, ECF No. 81 at 18.)  But, there are two problems with this argument.  First, it is not

clear that this "amendment" is because one of Dr. Pinkston's prior disclosures was "incorrect."

That is, Defendant is not stating that Dr. Pinkston misread the drawing and inadvertently stated

that the designed shaft length was 4.3 inches when it was, in fact, another length.  Rather,

Defendant cites to a drawing that contains the listed data (*see id*. (citing Resp. Ex. 41, ECF No.

86-4 at 95-96)) and explains that following "[c]ontinued post-report study of other produced

engineering drawings and photographs," Dr. Pinkston subsequently came to a new conclusion that

this drawing was "mislabled and should not have been relied upon . . . ."  (Resp. at 15, ECF No.

81 at 18 (emphasis added).)

Second, neither Defendant nor Dr. Pinkston explains why this change justifies all the

substantial alterations and additional opinions contained in his supplemental report.  Such

expansive supplementations must either be explicitly tied to new evidence that did not exist at the

time Dr. Pinkston compiled his opinion or must clearly demonstrate how the additional portions

of the report were added to correct inadvertent mistakes or omissions.  Defendant and Dr. Pinkston

have not shown how the mistake they point to necessitates the supplemental report's liberal

additions.  Consequently, the Court holds Dr. Pinkston's supplementation was improper under Rule 26(e).  For the same reasons explained in the discussion of Mr. McNeely's supplemental report, the undersigned finds it was not harmless or justified under the factors set forth in *Woodworker's Supply*.  Thus, Plaintiff's motion as to Dr. Pinkston is granted.

IT IS THEREFORE ORDERED that Plaintiff, ONEOK Rockies Midstream, L.L.C.'s Amended Motion to Strike/Exclude Expert Opinions Disclosed After the Expert Witness Designation Date (ECF No. 75) is GRANTED IN PART and DENIED IN PART.  The motion is DENIED as to Defendant's experts Dr. William Clark and William Coleman and GRANTED as to Defendant's experts Britt McNeely and Dr. Bruce Pinkston.  The supplemental reports of Mr. McNeely and Dr. Pinkston are hereby excluded.

ORDERED this 9th day of December, 2021.

 

**SUSAN E. HUNTSMAN, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**