## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ONEOK ROCKIES MIDSTREAM, L.L.C.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 20-CV-0580-CVE-SH** |
| | ) | |
| **GREAT PLAINS TECHNICAL** | ) | |
| **SERVICES INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Before the Court are defendant Great Plains Technical Services Inc.'s motion for partial summary judgment (Dkt. # 31)[1]; plaintiff ONEOK Rockies Midstream, L.L.C.'s response (Dkt. # 44); defendant's reply (Dkt. # 59); plaintiff's motion in limine (Dkt. # 39); defendant's response to plaintiff's motion in limine (Dkt. # 63); defendant's motion in limine (Dkt. # 40); plaintiff's response to defendant's motion in limine (Dkt. # 61); and defendant's reply as to its motion in limine (Dkt. # 70). This case arises from a July 8, 2018 fire at plaintiff ONEOK Rockies Midstream, L.L.C.'s (ONEOK) gas plant, which plaintiff alleges was caused by a faulty electric motor repair performed by defendant Great Plains Technical Services Inc. (Great Plains). On October 8, 2020, plaintiff filed a petition in the District Court of Tulsa County, Oklahoma alleging four claims for relief: negligence (count 1); breach of implied warranty (count 2); breach of contract (count 3); and breach of express warranty (count 4). Dkt. # 2-2. On November 12, 2020, this case was properly removed to federal

---

[1]    The Court notes that defendant filed an unredacted version of its motion for partial summary judgment (Dkt. # 33). For purposes of this opinion and order, the Court will cite to the unredacted version.

court as there is complete diversity between the parties and the amount in controversy is greater than $75,000. Dkt. # 2, at 2-3; see also 28 U.S.C. § 1332. On September 7, 2021, defendant moved for partial summary judgment on two issues as to the interpretation of certain portions of the master service agreement (MSA) between plaintiff and defendant, and on plaintiff's claim for breach of express warranty (count 4). Dkt. # 33.

## I.

The following facts are not in dispute: plaintiff ONEOK is "a midstream service provider" in the business of "gathering, processing, stor[ing], and transport[ing] natural gas." Dkt. # 33, at 2; Dkt. # 44, at 2. As part of its business, ONEOK owns and operates the Stateline Gas Plant in North Dakota, which "utilizes compressors powered by turbines and electric motors[.]" Dkt. # 33, at 2; Dkt. # 44, at 2. Defendant Great Plains is "generally in the business of providing repair services for motors and other individual equipment." Dkt. # 33, at 2; Dkt. # 44, at 2.

On or around June 30, 2014, ONEOK and Great Plains executed an MSA "for Great Plains to provide services to ONEOK." Dkt. # 33, at 2; Dkt. # 44, at 2. The MSA "and the rights and duties of the parties arising out of this [MSA] shall be governed by and construed in accordance with the laws of the State of Oklahoma"; and "the parties agree that [any legal action] shall be commenced and prosecuted in the courts of Tulsa County, Oklahoma, or in the United States District Court for the Northern District of Oklahoma." Dkt. # 33-1, at 16 (MSA). Section 7 of the MSA states, in pertinent part:

> 7. Indemnification and Waiver of Liability. (a) General Indemnity: [Great Plains] agrees to defend, protect, indemnify and hold harmless [ONEOK] . . . from every kind or character of damages, losses (including death), liabilities (including taxes, liens), expenses, character of damages, demands or claims, judgments, orders, or decrees, including any and all costs and fees . . . to the extent arising from any cause whatsoever growing out of or incident to the

strict liability, intentional misconduct, illegal acts, negligent acts or omissions of [Great Plains] . . . or [Great Plains'] failure to perform under this agreement.

Id. at 6.  Section 7 further provides that Great Plains "shall not be required to pay, reimburse, or hold [ONEOK] indemnitees harmless from any loss or damage to the extent that it is finally adjudicated in a court of competent jurisdiction that such claims are caused by any intentional misconduct, illegal acts, negligent acts or omissions" of ONEOK or the ONEOK indemnitees.  Id.  Section 8 of the MSA, which contains limitations of liability as between ONEOK and Great Plains, states, in pertinent part:

> except for liability arising out of breach of confidentiality obligations . . . or liability for indemnification set forth in this agreement, including section 7, neither [ONEOK] . . . nor [Great Plains] shall be liable to the other for any indirect, consequential, special, incidental, punitive, or similar damages, including but not limited to lost profits, arising out of or in connection with such party's performance of or failure to perform its obligations hereunder[.]

Id. (emphasis added).  Finally, section 13 of the MSA, the express warranties, states:

> (a) [Great Plains] expressly warrants that it has knowledge, familiarity, experience, equipment and fully trained personnel to perform the [w]ork, and that the [w]ork provided under this [a]greement and the [w]ork [o]rder shall be provided expeditiously and in a good and workmanlike manner in accordance with the highest industry standards.  Any [w]ork not so rendered shall be promptly retendered at no cost to [ONEOK].

> (b) [Great Plains] expressly warrants the [w]ork and/or any [m]aterials that it or its subcontractors have furnished hereunder for one (1) calendar year from [ONEOK's] acceptance of the [w]ork[.]

> . . .

> (e) [Great Plains] expressly warrants that its [w]ork and any [m]aterials shall conform to this entire [a]greement and to the specifications, drawings, samples or other decsriptions upon which this [a]greement is based, that [m]aterials and equipment shall be fit and sufficient for the purpose intended, merchantable, of new, good material and workmanship, and free from defect.  Inspection, test, acceptance or use of the finished [w]ork or [m]aterials provided hereunder shall not affect [Great Plain's] obligation under this warranty, and such warranties shall survive inspection, test, acceptance and use. . . .

Id. at 9 (emphasis added).

In 2017, after experiencing problems with two motors at its Stateline Gas Plant, ONEOK "sent the two motors to Great Plains for evaluation and advice, and ultimately requested that Great Plains repair one of them." Dkt. # 33, at 3; Dkt. # 44, at 3. Great Plains performed a repair on one of the motors and returned the motor to ONEOK on May 11, 2017.[2] Dkt. # 33, at 3, 5; Dkt. # 44, at 3, 4.

On July 8, 2018, over a year later, "there was a fire at the ONEOK Stateline Gas Plant," which ONEOK alleges is "due to [Great Plains'] alleged faulty repair of the shaft of one of the electric motors." Dkt. # 33, at 3; Dkt. # 44, at 3. Consequently, ONEOK filed suit "seek[ing] recovery under theories of negligence, breach of implied warranty, breach of contract, and breach of express warranty." Dkt. # 33, at 3; Dkt. # 44, at 3. ONEOK "claims property damage in an amount exceeding $13,000,000 and business interruption charges exceeding $6,500,000." Dkt. # 33, at 3; Dkt. # 44, at 3. Further, plaintiff states in its petition, "[p]laintiff hereby gives notice to the Court and all parties concerned that the [u]nderwriters on the policy of insurance issued to ONEOK and which insured the loss are real parties in interest. . . . Pursuant to their subrogation rights under the insurance policy . . . [u]nderwriters and ONEOK have brought this lawsuit."[3] Dkt. # 2-2, at 7.

---

[2]     The Court notes that ONEOK disputes that it "accepted" Great Plains' repair on its motor, Dkt. # 44, at 4; however, the parties do not dispute that a repair was performed on one of the motors, which Great Plains returned to ONEOK on May 11, 2017.

[3]     The Court notes that subrogation and indemnification are distinct. Contractual "subrogation is created by an agreement or contract between parties granting the right to pursue reimbursement from a third party in exchange for payment of a loss." Yousuf v. Cohlmia, 741 F.3d 31, 44 (10th Cir. 2014). On the other hand, "[i]ndemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person." Okla. Stat. tit. 15, § 421.

However, in the petition, plaintiff does not actually name the "underwriters" of its insurance policy. Dkt. # 2-2. Moreover, the "underwriters" are not parties to this lawsuit and there is no subrogation claim in the petition. Id.; see also Dkt. # 1 (civil cover sheet); Dkt. # 2-3, at 1 (state court summons). Finally, plaintiff does not seek indemnification. See Dkt. # 2-2 (petition).

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). "[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery[,]" Fed. R. Civ. P. 56(b), including before any discovery has been conducted. "Movants for summary judgment bear the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." Silverstein v. Federal Bureau of Prisons, 559 F. App'x 739, 752 (10th Cir. 2014); see also Adler v. Wal–Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

5

Id. at 250.  In its review, the Court construes the record in the light most favorable to the party

opposing summary judgment.  Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

Additionally, "[i]f language of a contract is clear and free of ambiguity the court is to

interpret it as a matter of law, giving effect to the mutual intent of the parties at the time of

contracting.  Whether a contract is ambiguous . . . is a question of law for the courts." Pitco Prod.

Co. v. Chaparral Energy, Inc., 63 P.3d 541, 545 (Okla. 2003); see also Gomez v. Am. Elec. Power

Serv. Corp., 726 F.2d 649, 651 (10th Cir. 1984) (finding that whether there is ambiguity in a contract

is a question of law decided by the court).

### III.

Defendant moves for partial summary judgment on the following issues:

*a.    Applicability of the MSA's Indemnity Provision*

Defendant argues that it is entitled to partial summary judgment pursuant to section 8 of the

MSA, which states that, other than liability for indemnification arising out of section 7 of the MSA,

"neither [ONEOK] . . . nor [Great Plains] shall be liable to the other for any indirect, consequential,

special, incidental, punitive, or similar damages, including but not limited to lost profits[.]" Dkt. #

33, at 1.  Plaintiff responds that "[s]ection 7 clearly and unambiguously provides that Great Plains

agrees to indemnify ONEOK 'from every kind or character of damage,' arising out of Great Plains'

negligence or that of its subcontractors.  The indemnification provision expressly provides that it

'shall not be limited by any limitation of liability contained herein.'"  Dkt. # 44, at 5.  Plaintiff

further responds that "nothing in the broad indemnity provision indicates that it is limited to third-

party claims, and therefore, it applies to claims by ONEOK against Great Plains."  Id. at 6.

Defendant replies, arguing for the first time, that "ONEOK has not pleaded a claim for liability for

6

indemnification under the MSA . . . [and] [a] claim for contractual indemnification is conceptually distinct from those actually pleaded by ONEOK, including its breach of contract claim."[4]  Dkt. # 59, at 4.

"An indemnity agreement is a valid agreement in Oklahoma, and is governed by statute." Fretwell v. Prot. Alarm Co., 764 P.2d 149, 152 (Okla. 1988).  Under Oklahoma law, "[i]ndemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person."  Okla. Stat. tit. 15, § 421.  Crucially, "unless a contrary intention appears" from the text of the contract, "[u]pon an indemnity against liability, expressly, or in other equivalent terms, the person indemnified is entitled to recover upon becoming liable"; and "[u]pon an indemnity against claims or demands, or damages or costs, expressly, or in other equivalent terms, the person indemnified is not entitled to recover without payment thereof."  Okla. Stat. tit. 15, § 427 (emphasis added).

Here, section 7 of the MSA clearly and unambiguously states that Great Plains agrees to indemnify ONEOK against "every kind or character of damages" arising out of Great Plains' negligence or failure to perform under the MSA.  Dkt. # 33-1, at 6.  However, under Oklahoma law, the party indemnified (ONEOK) is entitled to recover (from Great Plains) upon becoming liable or upon making payment on any claims, demands, damages, and so forth.  See Okla. Stat. tit. 15, § 427.

---

[4]     The Court notes that in its motion for partial summary judgment (Dkt. # 33), defendant's argument is vague--essentially requesting that the Court find that the MSA says what it says. Dkt. # 33, at 1.  However, in its reply, defendant pivots and argues with specificity--for the first time--that ONEOK never brought a claim for liability for indemnification under the MSA.  The purpose of a motion is to set forth arguments with particularity--allowing plaintiff a full and fair opportunity to respond--and that gamesmanship is never appropriate. Notwithstanding, the Court interprets defendant's motion as a request for partial summary judgment, pursuant to section 8 of the MSA, on the issue of "business interruption damages," i.e. lost profits, claimed by plaintiff in an amount exceeding $6,500,000 (Dkt. # 2-2, at 3).

When read in its entirety, section 7 clearly and unambiguously contemplates third-party demands, claims, or lawsuits--for example, the first sentence states that Great Plains "agrees to defend, protect, indemnify and hold harmless" ONEOK.  Dkt. # 33-1, at 6.  In other words, should ONEOK become liable to a third party for an incident or conduct arising out of Great Plains' negligence or failure to perform, Great Plains agrees to indemnify ONEOK against any associated damages or costs related to that third-party claim.  In its petition, ONEOK does not state a claim for indemnity, and it does not allege that ONEOK has become liable to any third party, or made payment to a third party on any claim for damages.  To find that section 7 applies in this case--in which there is no third party claim-- runs contrary to Oklahoma law and would result in an absurdity.  See Okla. Stat. tit. 15, § 154 (the language of a contract governs its interpretation only if it does not involve an absurdity).  That is, ONEOK did not become liable to itself, nor did it make a payment on a claim for damages to itself; therefore, the Court finds that section 7 of the MSA plainly does not apply in this case.

Further, section 8 of the MSA states that, except for liability arising out of breach of confidentiality or liability for indemnification, neither ONEOK nor Great Plains "shall be liable to the other for any indirect, consequential, special, incidental, punitive or similar damages, including but not limited to lost profits, arising out of or in connection with such party's performance of or failure to perform its obligations hereunder."  Dkt. # 33-1, at 6.  Because neither exception--breach of confidentiality or liability for indemnification--applies, the Court finds that the plain, unambiguous language of section 8 is operative here as a limitation of liability in this case. Therefore, the Court finds that ONEOK's claim for over $6,500,000 in "business interruption damages" is the kind of lost profits contemplated by section 8's limitation of liability, and is not recoverable against Great Plains as a matter of law.  In sum, the Court finds that defendant's motion

for partial summary judgment on the issue of plaintiff's claim for over $6,500,000 in lost profits should be granted.

b.      *Interpretation of Section 7 of the MSA's Contributory Negligence Clause*

Defendant argues that it "is entitled to partial summary judgment holding that, pursuant to section 7 of the MSA[,] Great Plains shall have no liability for indemnification if it is determined that ONEOK's claims are caused by any intentional misconduct, illegal acts, negligent acts or omissions of ONEOK[.]" Dkt. # 33, at 1.  The Court found in Part III.a, supra, that section 7 of the MSA does not apply in this case.  Thus, the Court finds that defendant's motion for partial summary judgment as to the interpretation of section 7's contributory negligence clause is moot.

c.      *ONEOK's Claim for Breach of Express Warranties*

Defendant argues that, "[p]ursuant to the MSA, the express warranties are limited to one calendar year from ONEOK's acceptance of the [w]ork[.]  ONEOK accepted the [w]ork at issue in this case on May 11, 2017[,]" and the express warranty had expired by the time of the July 8, 2018 Stateline Gas Plant fire; thus, "Great Plains is entitled to summary judgment as a matter of law on ONEOK's claim for breach of express warranties." Dkt. # 33, at 12.  Plaintiff responds that "Great Plains erroneously contends that ONEOK's several claims for breach of express warranty expired one year after ONEOK's acceptance of the work[,]" because Great Plains relies on "an inapplicable limitations period" that applies to section 13(b) only--not sections 13(a) and (e)--which are the subsections plaintiff relies on for its breach of express warranty claim (count 4).  Dkt. # 44, at 9. Defendant replies that "[s]ection 13(b) defines the [w]arranty [p]eriod applicable to each of [the] warranties set forth in [s]ection 13"; therefore, "[a]t the time of the fire, the '[w]arranty [p]eriod' of the MSA had expired."  Dkt. # 59, at 10.

Under Oklahoma law, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." Okla. Stat. tit. 15, § 157. Moreover, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Okla. Stat. tit. 15, § 154.

Here, section 13(b) states, in pertinent part, that Great Plains "expressly warrants the [w]ork and/or any materials that it or its subcontractors have furnished hereunder for one (1) calendar year from [ONEOK's] acceptance of the [w]ork[.]" Dkt. # 33-1, at 9. Great Plains performed a repair on an engine and returned it to ONEOK on May 11, 2017. Nothing in the undisputed facts suggests that ONEOK rejected, or, in other words, did not accept the repaired engine on that date. Further, it is undisputed that the fire occurred more than one year after Great Plains returned the repaired engine to ONEOK. The Court finds that the repaired engine clearly and unambiguously fits within the plain meaning of "the work" contemplated by section 13(b)'s one year express warranty. The Court notes plaintiff's argument that the one year warranty applies to section 13(b) only, and that the language in its petition tracks the language of the express warranties contained in sections 13(a) and (e). However, section 13 must be read as a whole--not in isolation--"each clause helping to interpret the others." See Okla. Stat. tit. 15, § 157. The Court finds that the clear and explicit language of the other subsections of section 13 are intended to delineate under what circumstances "the work" expressly warranted would be "non-conforming"; for example, work not completed in a "good and workmanlike manner in accordance with the highest industry standards." Dkt. # 33-1, at 9 (section 13(a) and section 13(b)). In sum, the Court finds that 1) section 13's one year express warranty limitations period applies to plaintiff's breach of express warranty claim; and 2) plaintiff's breach of express warranty claim fails as a matter of law, because the one year limitations period had

expired at the time of the fire.  Thus, the Court finds that defendant's motion for partial summary judgment on plaintiff's breach of express warranty claim (count 4) should be granted.

## IV.

Plaintiff and defendant move in limine as to the following:

a.      *Plaintiff's Motion in Limine (Dkt. # 39)*

Plaintiff moves in limine[5] to preclude defendant from "directly or indirectly referring to, discussing, or eliciting testimony . . . regarding": 1) any mention that "ONEOK had first-party insurance coverage for any of the damages sustained in the incident, the fact that ONEOK has received any payments from its first-party insurers . . . , and the fact that ONEOK's first-party insurers have asserted subrogation rights"; 2) any mention that "a first-party insurance company or its adjusters hired [any] experts"; 3) ONEOK's or Great Plains' "financial condition, net worth, and gross and net revenues"; and 4) mention of "any limitations of liability, indemnity provisions, and the like."  Dkt. # 39, at 4-6.

As a preliminary matter, defendant does not respond or object to plaintiff's motion in limine as to the parties' financial condition, net worth, gross and net revenues.  Further, defendant agrees with plaintiff "that the limitations of liability and indemnity provisions in the Master Service Agreement are issues for the Court to determine."  Dkt. # 63, at 4.  The Court notes that defendant takes issue with the wording of plaintiff's "proposed order" granting plaintiff's motion in limine as to the at-issue MSA provisions.  See Dkt. # 63, at 4-5.  However, plaintiff's "proposed order" is

---

[5]      The Court notes that plaintiff's motion in limine is a single page and the actual substance and arguments that are purportedly the subject of plaintiff's motion are contained in plaintiff's "proposed order."  Compare Dkt. # 39, at 1, with id. at 4-6.  The Court reminds plaintiff that its motion, not the proposed order, must "state with particularity the grounds for seeking the [court] order[.]"  Fed. R. Civ. P. 7(b)(1)(B).

immaterial, and the parties agree as to the substance of plaintiff's request to limit evidence, claims, or argument regarding the MSA's limitations of liability and indemnity provisions that are inconsistent with the Court's legal determinations herein.  Therefore, the Court finds that plaintiff's motion in limine as to any mention of or reference to 1) the parties' financial condition, net worth, gross and net revenues;  and 2) anything contrary to the Court's legal determinations regarding the MSA's limitations of liability and indemnity provisions should be granted.

> 1.      First-Party Insurance Payments and Subrogation Rights

Plaintiff requests that the Court exclude from trial any reference to: ONEOK's first-party insurance coverage, any payments ONEOK received from its first-party insurer, and ONEOK's insurer asserting any subrogation rights. Dkt. # 39, at 4.  Specifically, plaintiff argues that, pursuant to Oklahoma's collateral source rule, evidence of first-party insurance payments are inadmissible. Id. at 5.  The Court agrees with plaintiff.

The Supreme Court of Oklahoma has found that "[t]he collateral source rule traditionally applies in the context of common law tort actions to determine the amount of compensatory damages which will compensate the injured party for all detriment caused." Blythe v. Univ. of Okla., 82 P.3d 1021, 1026 (Okla. 2003) (internal quotations and alterations omitted).  Under the collateral source rule, "total or partial compensation for an injury received by the injured party from a collateral source wholly independent of the wrongdoer will not operate to lessen the damages recoverable from the person causing the injury." Id. (quoting Denco Bus Lines, Inc. v. Hargis, 229 P.2d 560, 564 (Okla. 1951)) (internal quotations omitted).  Moreover, "[i]t is well settled that damages recoverable for a wrong are *not diminished* by the fact that the party injured has been wholly or partly [indemnified]

for his loss by insurance effected by him and to the procurement of which the wrongdoer did not contribute[.]" Id. (internal quotations omitted) (emphasis in original).

Under Fed. R. Evid. 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Further, pursuant to Fed. R. Evid. 403, the "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [and] misleading the jury."

Here, plaintiff brings a (common law tort) negligence claim against defendant. Any reference to plaintiff's receipt of insurance payments plainly fits within the scope of the collateral source rule. See id. That is, any payment plaintiff received from its first-party insurer does not diminish the recoverable damages from defendant, should defendant be found liable. Moreover, despite plaintiff alluding to its "underwriters" as a "real parties in interest," plaintiff and defendant are the only parties to this lawsuit. Thus, the fact that 1) plaintiff received compensation for its loss from a first-party insurer; and 2) the insurer may assert its subrogation rights and pursue reimbursement from plaintiff (should plaintiff receive a damage award in this case), is not relevant to any of plaintiff's claims against defendant, has no probative value as to whether defendant is liable in this case, and runs the risk of unfair prejudice, misleading the jury, or confusing the issues. See Fed. R. Evid. 401, 403. The Court notes defendant's argument that the collateral source rule precludes admission of insurance payments for the purpose of reducing recoverable damages in a tort case, but that such evidence may be admissible for another purpose. Dkt. # 63, at 3-4. The Court finds defendant's arguments highly speculative and reminds defendant that the Court's rulings are preliminary, and defendant may raise any well-founded objections at trial. In sum, the Court finds that plaintiff's

motion in limine as to first-party insurance coverage and subrogation rights should be granted.

2.      Collateral Sources Introduced via Experts and Consultants

"Plaintiff moves the [C]ourt, for the same reasons as for excluding mention of first-party insurance payments and subrogation, to prohibit [d]efendant . . . from mentioning [the] same or questioning the experts witnesses or admission of any documents [as to] a first-party insurance company or its adjusters hir[ing] the experts[.]"  Under Fed. R. Evid. 703, "if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."   In other words, defendant may not use expert witness testimony as a backdoor for introducing otherwise inadmissible evidence.  As the Court found in Part IV.a.1, supra, any evidence as to first-party insurance payments or the insurer asserting subrogation rights is not relevant--and thus has no probative value--as to whether defendant is liable in this case.  Therefore, any reference to a first-party insurer and its rights via an expert witness is substantially outweighed by the risk of unfair prejudice.  Accordingly, the Court finds that plaintiff's motion in limine as to introducing any mention of or reference to first-party insurance payments or subrogation rights via any expert witnesses should be granted.

b.      *Defendant's Motion in Limine (Dkt. # 40)*

Defendant requests that the Court exclude "new witnesses that ONEOK identified for the first time in [its] second amended disclosures."  Dkt. # 40, at 1.  Plaintiff responds that it "intends to call to testify at trial the experts it identified in its Designation of Experts, those identified as 30(b)(6) corporate representatives, and only those people who have been deposed in this case[.]" Dkt. # 61, at 1.  Defendant replies that its motion in limine "is moot as long as Great Plains is allowed to

14

depose the newly listed witnesses, Jeffrey Hammond and Troy Sanstra[,]" who, at the time of defendant's October 20, 2021 reply (Dkt. # 70), were scheduled for depositions.  Therefore, the Court finds defendant's motion in limine is moot.

**IT IS THEREFORE ORDERED** that defendant Great Plains Technical Services Inc.'s motion for partial summary judgment (Dkt. # 31) is **granted in part** as to the issue of plaintiff's claim for over $6,500,000 in lost profits; **moot in part** as to section 7 of the MSA's contributory negligence clause; and **granted in part** as to plaintiff's breach of express warranty claim (count 4).

**IT IS FURTHER ORDERED** that plaintiff's motion in limine (Dkt. # 39) is **granted**.

**IT IS FURTHER ORDERED** that defendant's motion in limine (Dkt. # 40) is **moot**.

**DATED** this 27th day of May, 2022.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE